# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IMMERSION CORPORATION, | ) ) ) C.A. No. 12-259-RGA ) |
| Plaintiff, | ) ) |
| v. | ) REDACTED - PUBLIC VERSION ) |
| HTC CORPORATION and HTC AMERICA, INC., | ) ) ) |
| Defendants. | ) ) ) ) ) |

## HTC'S REPLY REGARDING ITS MOTION TO EXCLUDE
## THE TESTIMONY OF JAMES PAMPINELLA

*Of Counsel:*

John P. Schnurer
Michael J. Engle
Ryan B. Hawkins
PERKINS COIE LLP
11988 El Camino Real
Suite 350
San Diego, CA  92130-2594
(858) 720-5700

Ryan McBrayer
Jonathan Putman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206) 359-8000

ASHBY & GEDDES
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

{00911102;v1 }

Terrence J. Wikberg
Brandon M. White
PERKINS COIE LLP
700 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 654-6200

Cheng C. Ko
PERKINS COIE LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
(602) 351-8000

Dated: November 3, 2014

# TABLE OF CONTENTS


Page

I. Mr. Pampinella's Reasonable Royalty Opinion Is Unreliable [REDACTED] ........ 1

II. Mr. Pampinella's Reasonable Royalty Opinion Is Also Unreliable Because [REDACTED] ........ 5

III. Mr. Pampinella's Backup Lost Profits Opinion Violates Basic Federal Circuit Law ........ 8

IV. Conclusion ........ 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AVM Techs. v. Intel Corp.*,
927 F. Supp. 2d 139 (D. Del. 2013)....................1

*Boston Sci. Corp. v. Cordis Corp.*,
838 F. Supp. 2d 259 (D. Del. 2012) *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013)....................9

*Engineered Products Co. v. Donaldson Co.*,
147 F. App'x 979 (Fed. Cir. 2005)....................9

*GPNE Corp. v. Apple, Inc.*,
No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014)....................7

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999)....................10

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
378 F. Supp. 2d 459 (D. Del. 2005)....................3

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006)....................8

*King Instruments Corp. v. Perego*,
65 F.3d 941 (Fed. Cir. 1995)....................10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)....................1, 2, 3, 4

*Lawrence v. Raymond Corp.*,
No. 09-cv-1067, 2011 WL 3418324 (N.D. Ohio Aug. 4, 2011) *aff'd*, 501 F. App'x 515 (6th Cir.2012)....................7

*Oiness v. Walgreen Co.*,
88 F.3d 1025 (Fed. Cir. 1996)....................9

*Oracle Am., Inc. v. Google Inc.*,
C 10-03561 WHA, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012)....................7

*Oracle Am., Inc. v. Google Inc.*,
No. C 10-03561 WHA, 2011 WL 6055505 (N.D. Cal. Dec. 6, 2011)....................7

*Princo Corp. v. Int'l Trade Comm'n*,
616 F.3d 1318 (Fed. Cir. 2010)....................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*ResQNet.com v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010)....................1, 3

*Riles v. Shell Exploration & Production Co.*,
298 F.3d 1302 (Fed.Cir.2002)....................5, 6

*Versata Software, Inc. v. SAP Am., Inc.*,
717 F.3d 1255 (Fed. Cir. 2013) *cert. denied*, 134 S. Ct. 1013, 187 L. Ed. 2d 851 (U.S. 2014) ....................10

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) *cert. denied*, 133 S. Ct. 1291, 185 L. Ed. 2d 187 (2013) ....................8

*Yarway Corp. v. Eur-Control USA, Inc.*,
775 F.2d 268 (Fed. Cir. 1985)....................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 702 ....................4, 5, 6, 7

Immersion's Opposition to HTC's Motion to Exclude the Testimony of James Pampinella makes key concessions and adopts a number of fundamentally incorrect positions. As such, and for the reasons outlined below, HTC's Motion to Exclude should be granted.

## I. Mr. Pampinella's Reasonable Royalty Opinion Is Unreliable [REDACTED]

Immersion's Opposition does not dispute that Mr. Pampinella's reasonable royalty opinion is based [REDACTED]. For this reason alone, Mr. Pampinella's reasonable royalty opinion is due a heightened level of scrutiny. The Federal Circuit has warned that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable" at best.[1] Although the Federal Circuit recently opened the door to the *possibility* of using them, despite "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages," they can only be used "*under certain limited circumstances*" and based on detailed analysis.[2]

Specifically, the Court cautioned that experts must "consider the license in its proper context within the hypothetical negotiation framework to ensure that the reasonable royalty rate reflects 'the economic demand for the claimed technology.'"[3] Failure to fully analyze a litigation license justifies exclusion,[4] as this Court found in *AVM Technologies v. Intel Corp,* where it excluded the expert for failing to analyze the circumstances surrounding a litigation license.[5] Mr. Pampinella's primary reliance on a litigation license accordingly places him on thin ice. His ability to testify depends upon whether his analysis places the Motorola Portfolio License "in the proper context" and undertakes a complete analysis of all aspects of the license.[6]

---

[1] *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77–78 (Fed. Cir. 2012).
[2] *Id*. at 77 (citing *ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 870–72 (Fed. Cir. 2010)) (emphasis added).
[3] *LaserDynamics*, 694 F.3d at 77.
[4] *ResQNet*, 594 F.3d at 870–72.
[5] *AVM Techs. v. Intel Corp.*, 927 F. Supp. 2d 139, 143 (D. Del. 2013).
[6] *LaserDynamics*, 694 F.3d at 77–78.

It is thus significant that Immersion does not dispute that the Motorola Portfolio License

This alone justifies exclusion of his opinion under Federal Circuit precedent.[9]

But, this is a straw-man argument that elides the actual problem with Mr. Pampinella's reasonable royalty opinion.

And to be clear, he could have done so with the data he already had.

[7] *See* HTC Motion at 2, Ex. 1 at IMMR00208127–128.
[8] Immersion Opp. at 7.
[9] *See LaserDynamics*, 694 F.3d at 77–78.
[10] Immersion Opp. at 7 (Noting Mr. Pampinella's reliance on Mr. Norris to conclude that "the [lump sum] amount was not based on volume").

[redacted] Or, if he disagreed with this approach, he could present an alternative method for analyzing *all* terms of the license and explaining how their litigation origin causes them to impact the hypothetical negotiation here.[12] His failure to do so justifies exclusion under *LaserDynamics*.[13]

[redacted]. Damages experts routinely, and are indeed required to analyze licenses in light of other facts that have since come to light. In the patent damages context, this is called the Book of Wisdom.[14] [redacted]

[11] *See* HTC Motion at Ex. 7, Stamm Report at 34.
[12] *See ResQNet*, 594 F.3d at 872 ("[I]t was ResQNet's burden, not Lansa's, to persuade the court with legally sufficient evidence regarding an appropriate reasonable royalty.")
[13] *LaserDynamics*, 694 F.3d at 77–78.
[14] *See, e.g.*, *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 463–69 (D. Del. 2005) (discussing acceptability of "Book of Wisdom" approach).
[15] HTC Motion at Ex. 3, Pampinella Report at 41–42, n. 237.
[16] [redacted]

[redacted] but he refused to do that. Nothing in the testimony of Immersion's CEO, Victor Viegas, or CFO, Paul Norris, changes this. [redacted]. Immersion argues that this is "factual" matter for cross-examination, but that ignores Mr. Pampinella's flawed *method*, [redacted] Under these circumstances, the Federal Circuit mandates exclusion, not cross-examination. For instance, in *LaserDynamics*, the expert erroneously used a single $6 million lump-sum license as the sole basis for his 6% running royalty, ignoring other lump sum licenses for the same technology which did not exceed $1 million.[18] The *LaserDynamics* expert "considered" those other licenses in his opinion, but ignored the actual, numerical impact they had on the value of the entire agreement so that he could focus on the highest rate.[19] [redacted] That he did so with a litigation license only renders his method more unreliable. As in *LaserDynamics*, it should be excluded, not just left for cross-examination.[22]

[17] *See LaserDynamics*, 694 F.3d at 76–80.
[18] *Id.*
[19] *Id.* at 80 ("Although Mr. Murtha conceded that QCI would be aware of LaserDynamics' prior licenses in the hypothetical negotiation, he dismissed the probative value of the licenses").
[20] HTC Motion at Ex. 8, Pampinella Reply Report at 11.
[21] *LaserDynamics*, 694 F.3d at 76–80.
[22] *Id.*

## II. Mr. Pampinella's Reasonable Royalty Opinion Is Also Unreliable

Here again, Immersion does not dispute the key facts that preclude any foundation for Mr. Pampinella's testimony: (1) his opinion hinges entirely upon the assumption that (2) he has no opinion as to and (3) instead, he based his conclusions entirely

Acknowledging that Mr. Pampinella's original opinion lacked sufficient factual basis, Immersion submits a brand-new declaration from Mr. Viegas which But even after reviewing this new declaration and Immersion's Opposition, HTC *still* cannot As such, it is impossible to tell whether Mr. Pampinella's testimony is founded upon "sound economic and factual predicates," nor can it be "reasonably . . . assessed for reliability."[23]

Take, for instance, Mr. Pampinella's conclusion that But

[23] *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1311 (Fed.Cir.2002) (expert analysis must be the result of "sound economic and factual predicates"); *see also* Fed. R. Civ. P. 702, Advisory Committee Notes, 2000 Amendment (citing *Daubert*, 509 U.S. 593 (expert testimony is in admissible only if it can be "reasonably . . . assessed for reliability").

[24] Immersion Opp. at 13, n.3

neither Mr. Pampinella nor anyone else has ever said

Moreover, this gaping hole in his opinion prevents HTC from assessing or challenging the inclusion or exclusion of patents within that group. And this is a non-trivial point. If Mr. Pampinella's plans to present an opinion which hinges upon Rule 702 requires that he provide some reasonably verifiable factual showing that This issue cannot be left for cross-examination, as HTC does not have the facts with which it can cross-examine him.

Similar flaws undermine , which is offered in support of Mr. Pampinella's conclusion that

Thus, HTC *still* does not know who (if anyone) at Immersion has actually

[25] *Riles*, 298 F.3d at 1311; Fed. R. Civ. P. 702, Advisory Committee Notes, 2000 Amendment.

[26]

[27] Viegas Declaration (D.I. 266) at 4–5.

[REDACTED] Rule 702 forbids expert testimony such as this, which presents conclusions that appear to be derived from a "black box." Rather, "the Court must be able to see the mechanisms in order to determine if they are reliable and helpful," because it "cannot simply take an expert's word for a specific proposition."[28] For instance, in the *Oracle* case, Judge Alsup rejected Oracle's first attempt to allocate a portion of a portfolio license to the asserted patents, because Oracle's expert admittedly "apportioned the purchase price of a broad license portfolio" based only upon his knowledge of the asserted patents, "without any basis to opine on the value of the rest of that license portfolio."[29] His revised attempt was permitted because it was backed by detailed declarations from, and depositions of, Oracle engineers who explained a precise technical ranking methodology that they personally performed, thereby showing the Court and opposing parties the "mechanism" inside his "black box."[30]

Finally, Immersion cannot salvage Mr. Pampinella's opinion by noting his review of Immersion's presentations and financial disclosures which [REDACTED] Immersion's reasoning is circular—Mr. Pampinella cannot form an opinion regarding the value [REDACTED] [REDACTED]. Any allocation informed solely by such documents necessarily lacks "any basis to opine on the value of the rest of that license portfolio," and is therefore flawed for the same reasons as the first, rejected opinion in *Oracle*.[31]

In sum, Mr. Pampinella's opinion lacks factual basis, is untestable, and must be excluded.

---

[28] *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (citing *Lawrence v. Raymond Corp.*, No. 09-cv-1067, 2011 WL 3418324, at *7 (N.D. Ohio Aug. 4, 2011) *aff'd*, 501 F. App'x 515 (6th Cir.2012)) (Exs. 9–10).
[29] HTC Motion at Ex. 5, *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 6055505, at *6 (N.D. Cal. Dec. 6, 2011).
[30] *See GPNE*, 2014 WL 1494247, at *4; HTC Motion at Ex. 6, *Oracle Am., Inc. v. Google Inc.*, C 10-03561 WHA, 2012 WL 850705, at *2–3 (N.D. Cal. Mar. 13, 2012).
[31] HTC Motion at Ex. 5, *Oracle Am.*, 2011 WL 6055505, at *6.

## III. Mr. Pampinella's Backup Lost Profits Opinion Violates Basic Federal Circuit Law

Immersion's Opposition concedes that the parties have never agreed Immersion instead argues that Mr. Pampinella should be allowed to offer the jury his best guess as to what such a license would look like, had it been signed, based upon proposals that were "actually exchanged" by the parties but were ultimately rejected.[32] Not so. Immersion's offer is not sufficient evidence to support a claim for lost profits. It cannot offer an exorbitant software royalty rate (knowing that it will be refused), and then claim the rejected, exorbitant rate as "lost profits" instead of a reasonable royalty. Damages law does not bless these tactics.[33]

Indeed, Mr. Pampinella's "but-for" world paints a quintessential portrait of patent misuse, which is one of HTC's defenses. and that its failure to do so caused "lost profits" to Immersion. But, Immersion could not, at the time, utilize its patent position to [5] and so Mr. Pampinella's but-for world cannot be founded upon such a scenario.

In any event, the absence of an actual software license between the parties is fatal to Mr. Pampinella's analysis under routine patent damages law as well because he lacks evidence for

---

32 Immersion Opp. at 18.

33 *Cf. Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29–30 (Fed. Cir. 2012) *cert. denied*, 133 S. Ct. 1291, 185 L. Ed. 2d 187 (2013) (acknowledging that, in the reasonable royalty context, the evidentiary value of "proposed licenses" is limited by "the fact that patentees could artificially inflate the royalty rate by making outrageous offers").

34 Immersion Opp. at 18.

35 *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1334 (Fed. Cir. 2010) (the patent misuse doctrine applies "when a patentee uses its patent 'as the effective means of restraining competition with its sale of an unpatented article'") (quoting *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 38 (2006)).

factors one and four of the *Panduit* test.[36] The foundational defect in Mr. Pampinella's opinion is that he cannot show "demand" by HTC (*Panduit* factor one) based only upon Immersion's self-written proposals to HTC's lower-level employees. From this evidence, a jury could only speculate that HTC's lower-level employees communicated Immersion's offers to HTC's decision-makers, and that those decision-makers had demand [REDACTED]. But this type of reasoning was rejected in *Engineered Products Co. v. Donaldson Co.*, where the patentee sought lost profits based the theory that its contract bid for a competing product had been communicated between engineers, merely because they had "office space in close proximity to one another."[37] The Federal Circuit said this evidence was "simply too speculative to support the necessary inferences," and reversed the jury's lost profits award.[38]

Nor can mere "proposals" for a software license support a finding under *Panduit* factor four. It is well-settled law that "[a]n award of lost profits may not be speculative,"[39] and may not be supported by evidence which merely "invites the jury to engage in rapt speculation."[40] Mr. Pampinella's evidence of proposals "exchanged" between the parties only invites the jury to speculate as to what royalty rate HTC *might have paid* Immersion, had they agreed [REDACTED] [REDACTED] Such speculation cannot support a conclusion that HTC owes Immersion [REDACTED]

[36] Faced with HTC's Motion, Immersion now backtracks from *Panduit* and urges the court to "modify [the test] as appropriate to fit the realities of the case." Opp. at 16 n.4. Of course, Mr. Pampinella's opinion only analyzes lost profits under the four-factor *Panduit* test, so if Mr. Pampinella's *Panduit* analysis is inadmissible, he will have no lost profits opinion to offer the Court or jury.
[37] 147 F. App'x 979, 990 (Fed. Cir. 2005).
[38] *Id*.
[39] *Boston Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 265 (D. Del. 2012) *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013); *see also Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985) ("It is well settled that proof of lost profits need not be absolute but may not be speculative. . . .").
[40] *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029–30 (Fed. Cir. 1996) (reversing jury's lost profits award based upon evidence including photos of the infringing products being sold in three Walgreen's stores, which the jury used as basis to speculate that sales had occurred in 1600 stores).
[41] *Id*.

Finally, Mr. Pampinella offers no foundation for any legal entitlement to "lost profits." It is well-understood that "[t]o recover lost profits damages, plaintiff [is] required to demonstrate that, "'but for' the infringement, it would have made the sales that were made by [the accused infringer]."[42] But here, had HTC not sold the accused phones, Immersion would not have stepped in to make those sales. Immersion does not even try to dispute this because, indisputably, *Immersion does not sell mobile phones.* Instead, it argues that lost profits need not be based upon sales of a "patented product" or sales that the patentee could have made, citing language from *Grain Processing* (a 1999 case) and *King Instruments* (a 1995 case).[43] But in those cases, the parties were competitors selling competing products that could have served as substitutes.[44] In *King Instruments*, for instance, the court held that lost profits could be collected on unpatented products because they were "competing products."[45] *But, Immersion does not sell "competing products" either*. Immersion sells no hardware products at all, and certainly no devices that could substitute for the accused products. In fact, Immersion has not cited a single case—and HTC is unaware of any—where a patentee who sold only a non-patented, non-competing, non-substitute product has collected "lost profits" on the accused infringer's sales. *Versata Software*, which was decided in 2013, controls here and forbids such an outcome.[46] Lost profits are unavailable to Immersion as a matter of law. For this reason, and because his theory also lacks sufficient factual predicates, Mr. Pampinella's lost profits opinion should be excluded.

## IV. Conclusion

For the reasons outlined above, Mr. Pampinella's reasonable royalty testimony, and one of his lost profits theories should be excluded.

---

[42] *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265–66 (Fed. Cir. 2013).
[43] Immersion Opp. at 18–19.
[44] *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (noting that parties "competed head-to-head"); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995).
[45] *King Instruments*, 65 F.3d at 952.
[46] *Versata Software*, 717 F.3d at 1265–66.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

John P. Schnurer
Michael J. Engle
Ryan B. Hawkins
PERKINS COIE LLP
11988 El Camino Real
Suite 350
San Diego, CA 92130-2594
(858) 720-5700

Ryan McBrayer
Sher S. Kung
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206) 359-8000

Terrence J. Wikberg
Brandon M. White
PERKINS COIE LLP
700 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 654-6200

Cheng C. Ko
PERKINS COIE LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
(602) 351-8000

Dated: November 3, 2014

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of November, 2014, **HTC'S REPLY REGARDING ITS MOTION TO EXCLUDE THE TESTIMONY OF JAMES PAMPINELLA** was served upon the below-named counsel of record in the manner indicated:

Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market St.
Hercules Plaza, 6th Floor
Wilmington, DE 19801

VIA ELECTRONIC MAIL

Harold J. McElhinny, Esquire
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, CA 94304

VIA ELECTRONIC MAIL

*/s/ Tiffany Geyer Lydon*

Tiffany Geyer Lydon (#3950)