IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IMMERSION CORPORATION,

  Plaintiff,

v.

HTC CORPORATION, and HTC
AMERICA, INC.

  Defendants.

Civil Action No. 12-259-RGA

## MEMORANDUM OPINION

Richard L. Horwitz, Esq., Potter Anderson & Corroon LLP, Wilmington, DE; David E. Moore, Esq., Potter Anderson & Corroon LLP, Wilmington, DE; Bindu A. Palapura, Esq., Potter Anderson & Corroon LLP, Wilmington, DE; Bryan Wilson, Esq., Morrison & Foerster LLP, Palo Alto, CA; Marc D. Peters, Esq. (argued), Morrison & Foerster LLP, Palo Alto, CA; Michael J. Kryston, Esq. (argued), Morrison & Foerster LLP, Palo Alto, CA; Stefan J. Szpajda, Esq. (argued), Morrison & Foerster LLP, Palo Alto, CA; Harold J. McElhinny, Esq., Morrison & Foerster LLP, San Francisco, CA, attorneys for the Plaintiff.


John G. Day, Esq., Ashby & Geddes, Wilmington, DE; Tiffany Geyer Lydon, Esq., Ashby & Geddes, Wilmington, DE; John P. Schnurer, Esq. (argued), Perkins Coie LLP, San Diego, CA; Michael J. Engle, Esq. (argued), Perkins Coie LLP, San Diego, CA; Ryan B. Hawkins, Esq., Perkins Coie LLP, San Diego, CA; Jack Ko, Esq. (argued), Perkins Coie LLP, San Diego, CA; Ryan McBrayer, Esq. (argued), Perkins Coie LLP, Seattle, WA; Sher S. Kung, Esq., Perkins Coie LLP, Seattle, WA, attorneys for the Defendants.


February _11_, 2015

1

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Presently before the Court are Defendants HTC Corporation and HTC America, Inc.'s Motion for Summary Judgment of Invalidity for U.S. Patent Nos. 8,059,105; 8,031,181; and 7,982,720 (D.I. 239), Motion for Summary Judgment of Non-Infringement for U.S. Patent Nos. 6,429,846; 7,982,720; 8,031,181; and 8,059,105 (D.I. 245), Motion for Summary Judgment of Non-Infringement for U.S. Patent No. 7,969,288 (D.I. 242), and Motion for Partial Summary Judgment Regarding the Damages Period for Three of the Patents-in-Suit (D.I. 233). These matters have been fully briefed. (D.I. 240, 258, 280, 246, 273, 283, 243, 269, 285, 234, 261, 288). The Court heard oral argument on the motions on November 25, 2014. For the reasons set forth herein, Defendants' Motion for Summary Judgment of Invalidity and Motion for Partial Summary Judgment Regarding the Damages Period for Three of the Patents-in-Suit are **GRANTED**. Defendants' Motion for Summary Judgment of Non-Infringement for U.S. Patent Nos. 6,429,846; 7,982,720; 8,031,181; and 8,059,105 is **GRANTED IN PART**. Summary judgment with respect to literal infringement for U.S. Patent Nos. 6,429,846 and 8,059,105 is **GRANTED**. The remainder of the motion is **DENIED**. Defendants' Motion for Summary Judgment of Non-Infringement for U.S. Patent No. 7,969,288 is **DENIED**.

## I. BACKGROUND

Plaintiff Immersion Corporation filed a complaint on March 2, 2012 alleging that HTC Corporation, HTC (B.V.I.) Corporation, HTC America Holdings, Inc., HTC America, Inc., and Exedea, Inc. infringed U.S. Patent Nos. 6,429,846 ("the '846 patent"), 7,592,999 ("the '999 patent"), 7,969,288 ("the '288 patent"), 7,982,720 ("the '720 patent"), 8,031,181 ("the '181 patent"), and 8,059,105 ("the '105 patent"). (D.I. 1). The case was stayed on April 12, 2012 pending an International Trade Commission investigation. (D.I. 7). The case was reopened on

2

May 1, 2013 and an amended complaint was filed against HTC Corporation and HTC America, Inc. (D.I. 11). The other defendants were terminated as parties. A second amended complaint was filed on June 10, 2013, which dropped the infringement allegations with respect to the '999 patent. (D.I. 28). Defendants responded to the second amended complaint on June 28, 2013. (D.I. 33). There are no counterclaims or cross-claims. The Court recently issued its Claim Construction Opinion. (D.I. 332).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

3

other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

### A. Invalidity

A patent claim is invalid as anticipated under 35 U.S.C. § 102 if "within the four corners of a single, prior art document . . . every element of the claimed invention [is described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (alterations in original). To determine if a patent is anticipated the court construes the claims and compares them against the prior art. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010). Anticipation "may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010).

Defendants argue that the '105 patent is anticipated by Japanese Patent Application No. 11-85400 ("Ogasawara"). (D.I. 240 at p. 3). The parties do not dispute that Ogasawara qualifies

4

as prior art under 35 U.S.C. § 102(a). (*Id.*). The parties disagree as to whether Ogasawara teaches a touch screen device that is "operative to allow the user to draw or write on the touch screen resulting in a graphical display at locations where the user has pressed the tip of an object." (*Id.* at p. 6). Defendants note that the Ogasawara specification expressly contemplates "allowing the operator to make random drawings using the pen 500." (*Id.* at p. 7). In addition, one of the figures depicts lines on a touch screen that are described as being "made by" various instruments. (*Id.*).

Plaintiff responds that Defendants do not provide any expert testimony to support their argument that Ogasawara anticipates the '105 patent. (D.I. 258 at p. 4). Plaintiff argues that its expert, Professor Balakrishnan, found that the Ogasawara patent taught tracing over existing images, not drawing new ones. (*Id.* at 6). Plaintiff argues its expert testimony, rebutted only by attorney argument, creates a triable issue of fact. (*Id.* at 8).

"Typically, testimony concerning anticipation must be testimony from one skilled in the art . . . ." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Defendants have not provided any expert testimony to support their interpretation of Ogasawara. "[A]ttorney argument is not sufficient to meet the burden of persuasion on invalidity at the summary judgment motion stage." *See Carrier Corp. v. Goodman Global, Inc.*, 2014 WL 3976575, at *7 (D. Del. Aug. 14, 2014). Professor Balakrishnan's declaration provides evidence raising a genuine issue of material fact; it is a question for the jury how credible it is. The Court therefore denies summary judgment on the ground that Ogasawara anticipates the '105 patent.

Defendants also argue that the '720, '181, and '105 patents are invalid because they were not filed "before" their parent patent issued. (D.I. 240 at p. 11). 35 U.S.C. § 120 allows a patent application to have the priority date of a previously filed application "if filed before the patenting

5

... on the first application . . . ." A foreign patent application with an identical specification was filed more than one year before the '720, '181, and '105 patent applications were filed. (D.I. 240 at p. 1). If the '720, '181, and '105 patents are not treated as continuations with the benefit of an earlier priority date, they would be anticipated by the foreign application.

The '846 patent, the parent patent from which the '720, '181, and '105 patent applications claim priority, was issued on August 6, 2002, the same day that the '720, '181, and '105 patent applications were filed. (D.I. 240 at p. 13). Defendants argue that patents issue automatically at 12:00:01 a.m. on their issue date, and therefore Plaintiff could not have filed the applications "before" the '846 patent issued. (*Id.*).

Plaintiff responds that the Patent and Trademark Office ("PTO") has long given continuation applications the priority date of a prior application if the continuation is filed on the same day that the prior application issues as a patent. (D.I. 258 at p. 16). The PTO makes its position clear in the Manual of Patent Examining Procedure, which states, "If the prior application issues as a patent, it is sufficient for the later-filed application to be copending with it if the later-filed application is filed on the same date, or before the date that the patent issues on the prior application." (Manual of Patent Examining Procedure § 211.01(b)(I) (2014)). Plaintiff argues that the Court should give *Chevron* deference to the PTO. (D.I. 258 at p. 15).

The Federal Circuit left open the question of "whether filing a continuation on the day the parent issues results in applications that are co-pending as required by the statute." *Encyclopaedia Britannica, Inc. v. Alpine Electronics of Am., Inc.*, 609 F.3d 1345, 1352 (Fed. Cir. 2010). Plaintiff notes that one district court has adopted the PTO's position. (D.I. 258 at p. 13). In *MOAEC, Inc. v. MusicIP Corp.*, the district court interpreted "'before' to mean 'not later

6

than'" and allowed a continuation filed the same day that the parent patent issued to have the parent's priority date. 568 F. Supp. 2d 978, 982 (W.D. Wis. 2008).

The Court does not agree with Plaintiff that the PTO is entitled to *Chevron* deference on this issue. A court only defers to an administrative agency's construction of a statute where "the statute is silent or ambiguous with respect to the specific issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). 35 U.S.C. § 120 is not silent on when a continuation must be filed in order to get the parent's priority date. Nor is it ambiguous. It expressly states that the application must be filed "before" the parent application issues.[1]

Plaintiff has the burden of going forward to prove entitlement to an earlier priority date. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008); *PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008). In this case, that means that Plaintiff has the burden of producing some evidence that it filed the continuation applications before the parent patent issued on August 6, 2002. The Court is not convinced of the correctness of Defendants' contention that a patent automatically issues at 12:00:01 a.m. on the issue day. Nevertheless, Plaintiff has presented no evidence of when on August 6, 2002 the applications were filed. Thus, no matter when the parent patent issued on August 6, 2002, Plaintiff has presented no evidence showing that the applications were filed before the parent patent issued. It is Plaintiff's burden to come forward with some evidence. It has not. Plaintiff has therefore not shown that the '720, '181, and '105 patent applications have a priority date earlier than August 6, 2002.

---

[1] The PTO understands the ordinary meaning of "before." As the previously quoted portion of the Manual of Patent Examining Procedure shows, the PTO defines "copending" as being "on the same date, or before the date." The PTO recognized that "before" is different than "the same."

7

It is not contested that foreign counterpart applications for the '846 patent were published more than one year before August 6, 2002. (D.I. 240 at p. 14). The foreign applications share an identical specification to the '846, '720, '181, and '105 patents. (*Id.*). Because the specifications are identical, they expressly teach each and every limitation of the patents, and therefore anticipate them. As a result, the Court holds that the '720, '181, and '105 patents are invalid as anticipated. I therefore grant Defendants' motion for summary judgment for invalidity of the '720, '181, and '105 patents.

## B. Non-Infringement[2]

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). First, the court must construe the asserted claims to ascertain their meaning and scope. *See id.* The trier of fact must then compare the properly construed claims with the accused infringing product. *See id.* This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir.

---

[2] Although I find that the '720, '181, and '105 patents are invalid as anticipated, I will nevertheless address the non-infringement arguments.

1989). However, "[o]ne may infringe an independent claim and not infringe a claim dependent on that claim." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (internal quotations omitted). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997). The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if at least one limitation of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims (as construed by the court). *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

1. '846 and '105 Patents

Defendants argue that the accused products do not infringe the asserted claims of the '846 and '105 patents because the actuators do not impart forces "directly" on the touch screen. (D.I.

9

246 at p. 5). The asserted claim of the '105 patent requires an actuator configured to "impart a force directly to the touch screen." (*Id.*). The Court construed that term to mean "impart a force on the touch screen without intervening structure." (D.I. 332 at 11). The asserted claims of the '846 patent all require an actuator "outputting a force directly on said touch input device." (D.I. 246 at p. 5). The Court construed that term to mean "outputting a force on the touch screen without intervening structure." (D.I. 332 at 10).

The Court's constructions of the touch screen terms are also central to the infringement issue. The Court construed "touch input device" to mean "device that allows a user to provide input by touching an area on the device, and may include a touch surface, a display, and a touch sensor." (*Id.* at 4). The Court construed "touch screen" to mean "a display device that allows a user to provide input by touching an area on the device, and may include a touch surface, a display, and a touch sensor." (*Id.* at 5).

Defendants argue that the accused devices do not literally infringe because there is always an intervening structure between the device and the actuator, namely the "chassis" or "bezel."[3] (D.I. 246 at p. 7). Plaintiff's argument rests on constructions that the Court did not adopt. Plaintiff argues that the bezel is part of the touch screen, so an actuator attached to the bezel is directly attached to the touch screen. (D.I. 273 at p. 9). This argument is unavailing because the bezel is not part of the touch screen under the Court's construction. Alternately, Plaintiff argues that "directly" can mean "through connected rigid bodies," and because the bezel is rigid, the force is imparted "directly." (*Id.* at p. 13). However, the Court did not adopt that construction. (*See* D.I. 332 at 10-11). Plaintiff did not present any argument that the accused devices literally infringe under Defendants' construction of the terms.

---

[3] The "chassis" or "bezel" is a rigid body that binds some or all of the other layers of the device together. (D.I. 273 at p. 10; D.I. 246 at p. 7).

10

Under the Court's construction of the terms discussed above, none of the devices literally infringe because there is always a bezel between the actuator and the touch screen. The Court therefore grants summary judgment to Defendants with respect to literal infringement of the '846 and '105 patents.

Plaintiff further argues that the devices infringe under the doctrine of equivalents because the precise location of the actuator does not substantially affect the actuator's function or the way it achieves the result. (D.I. 273 at p. 17). Plaintiff has provided expert testimony to support its argument. (*Id.* at pp. 17-18). Equivalence is a question of fact that requires consideration of "credibility, persuasiveness and weight of evidence." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609-10 (1950). "Infringement under the doctrine of equivalents is not equitable in nature and is triable as of right to the jury." *Carbide Blast Joints, Inc. v. Rickert Precision Indus., Inc.*, 73 F.3d 379 (Fed. Cir. 1995). Plaintiff's evidence raises a genuine issue of material fact that must be submitted to the jury, and the Court therefore denies summary judgment of non-infringement of the '846 and '105 patents under the doctrine of equivalents.

2. '720 and '181 Patents

All asserted claims of the '720 and '181 patents require "a first region associated with cursor positioning" and a second region "not related to cursor positioning." (D.I. 246 at p. 15). The parties agree that the virtual keys, a series of buttons such as "Menu," "Search," and "Home" at the bottom of the devices, are the second region. (*Id.* at pp. 15-16). They dispute whether the keys meet the "not related to cursor positioning" limitation. (*Id.* at p. 15; D.I. 273 at

p. 18). The Court construed "cursor" to mean "movable, visible mark used to indicate a position of interest on a display device."[4] (D.I. 332 at 6).

Defendants argue that the virtual keys are related to cursor positioning because they can call up a cursor in the first region when pressed. (D.I. 246 at p. 17). For example, when a user presses the "Search" key, a text box with a blinking text caret, which Plaintiff argues is a cursor, is called up to the screen. (*Id.*). Defendants further argue that the "Back" button may take the user back to a screen with a text caret as well. (*Id.*). Thus, even though the virtual keys cannot display a cursor, they are nevertheless "related to cursor positioning." (D.I. 283 at p. 9).

Plaintiff argues that the virtual keys are physically incapable of displaying a cursor, and can therefore not be "related to cursor positioning." (D.I. 273 at p. 18). Plaintiff argues that the "Search" key runs a search application, which in turn positions the cursor. (*Id.* at 18). Thus, the virtual key does not contribute to positioning the cursor, but is merely a control area that runs a search program. (*Id.*).

Whether a text caret is a cursor is a question of fact properly determined by the jury. *See Markman*, 52 F.3d at 976. Similarly, whether the virtual keys are "related to cursor positioning" by virtue of triggering applications is a genuine issue of material fact. The Court therefore denies summary judgment of non-infringement of the '720 and '181 patents.

3. '288 Patent

Claim 18 of the '288 patent is a method claim for delivering haptic feedback on a device performing multiple tasks. (D.I. 243 at p. 4). Defendants argue that they are entitled to summary judgment of non-infringement because the accused devices do not perform the step of

---

[4] Because the Court adopted the above construction, it will not address the arguments relating to infringement under Plaintiff's proposed construction, which was broader than the Court's and included light as an example of a "cursor."

12

"determining which one of a plurality of concurrently running application programs is active in the multi-tasking environment." (*Id.*). Defendants argue that the accused devices do not perform this step because a program does not need to be active to provide haptic feedback. (*Id.* at p. 6). For example, a phone can vibrate when receiving a call without the phone function being active. (*Id.*). Defendants further note that Plaintiff has not identified any source code that performs an active determining step. (D.I. 285 at p. 6).

Plaintiff responds that as part of the process of bringing an application to the foreground, the device must change the values of system variables, change the flags for the process records associated with the applications, and set up internal connections to send information to the active application.[5] (D.I. 169 at pp. 9-10). Plaintiff puts forth expert testimony that none of these actions could be performed unless the devices determined which application is active. (*Id.* at p. 7).

"It is hornbook law that direct evidence of a fact is not necessary. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (internal quotation marks and citations omitted), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc). While Defendants are correct that Plaintiff has not identified any source code that performs the determining step, Plaintiff is not required to do so. Plaintiff agrees that none of the three examples it identifies actually performs the determining step, but argues that they reflect that the determining step has been performed. (D.I. 324 at 107). Such circumstantial evidence, supported by expert

---

[5] Defendants requested that the Court strike these arguments because they were not disclosed in the experts' reports or depositions. (D.I. 285 pp. 2-4). The Court finds that the factual underpinnings of the arguments were disclosed, and will therefore not strike the theories.

13

declarations, is sufficient to raise a genuine issue of material fact. The Court therefore denies summary judgment of non-infringement of the '288 patent.

## C. Damages Period

Defendants seek partial summary judgment that Plaintiff cannot collect damages on the '288 patent prior to February 10, 2014, when the patent reissued with amended claim language.[6] (D.I. 234 at p. 1).[7] During reexamination, claim 18 of the '288 patent was amended to add "concurrently running" to the step of "determining which of a plurality of *concurrently running* applications is active." (*Id.* at p. 2).

If a patent is reissued, damages are available for the period between the original issuance and the issuance of the reexamined claims only if the original claims and reexamined claims are "identical." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998). "Reexamined claims are 'identical' to their original counterparts if they are 'without substantive change.' . . . If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate." *Id.*

In determining "whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Id.* at 1347. A change made in response to a prior art rejection is not *per se* substantive. *Id.* Nevertheless, amendments that overcome a rejection are "highly influential" because "it is difficult to conceive

---

[6] Defendants do not specifically state that the reexamination certificate issued on February 10, 2014, but the Court assumes the certificate issued on that date based on the argument as a whole.

[7] Defendants also seek partial summary judgment limiting the damages periods for the '720 and '181 patents. (D.I. 234 at p. 1). Because the Court finds those patents invalid as anticipated, *see supra* III.A., I will not address the arguments with respect to the '720 and '181 patents.

14

of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment." *Id.* at 1348.

Defendants argue that adding "concurrently running" substantively changed the claim. (D.I. 234 at p. 2). Plaintiff responds that adding "concurrently running" was a clarifying amendment that did not affect the scope of the claim. (D.I. 261 at p. 3). Plaintiff argues that having a plurality of concurrently running applications was an inherent claim requirement, and the amendment made explicit what was already implicit. (*Id.* at pp. 3, 7). Plaintiff cites to many instances in the specification referring to multiple programs running. (*Id.* at pp. 5-7). Plaintiff argues that "[r]eading the claim in light of the specification, a person of ordinary skill in the art would understand that each of the claimed applications is running, which inherently means that they are concurrently running programs . . . ." (*Id.* at p. 7).

The Court finds that the amendment substantively changed the scope of the claim. While the specification is a relevant consideration, Plaintiff's argument that having multiple programs is inherent in the claim because it is disclosed in the specification is contrary to the "well-established principle that a court may not import limitations from the written description into the claims." *See Laitram*, 163 F.3d at 1347. The group of programs in the original claim language could have included programs that were not running. Requiring that the programs be concurrently running narrows the claim. Moreover, though not dispositive, it is highly persuasive that the patent examiner allowed the amended claim only after "concurrently running" was added because the prior art made "no reference to any other programs that are running concurrently and how the determination is made between the plurality of concurrently running programs . . . ." ('288 reexamination, Notice of Reexamination certificate at 5-6 (Jan. 15,

15

2014)). Because the scope of the original claims and reexamination claims is not identical, the Court grants Defendants' motion for partial summary judgment.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment of Invalidity (D.I. 239) and Motion for Partial Summary Judgment Regarding the Damages Period for Three of the Patents-in-Suit (D.I. 233) are **GRANTED**. Defendants' Motion for Summary Judgment of Non-Infringement for U.S. Patent Nos. 6,429,846; 7,982,720; 8,031,181; and 8,059,105 (D.I. 245) is **GRANTED IN PART**. Summary judgment with respect to literal infringement for U.S. Patent Nos. 6,429,846 and 8,059,105 is **GRANTED**. The remainder of the motion is **DENIED**. Defendants' Motion for Summary Judgment of Non-Infringement for U.S. Patent No. 7,969,288 (D.I. 242) is **DENIED**.