# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IMMERSION CORPORATION,      )
                                        )
         Plaintiff,       )
                                        )   C.A. No. 12-259-TBD
      v.                 )
                                        )
HTC CORPORATION and HTC AMERICA,  )
INC.,                                )
                                        )
         Defendants.    )

## ~~REVISED JOINT (PROPOSED)~~ PRETRIAL ORDER

I.      NATURE OF THE ACTION AND THE PLEADINGS ............................................. 1

II.     BASIS OF FEDERAL JURISDICTION ............................................................... 4

III.    PARTIES' JOINT STATEMENT OF ADMITTED FACTS REQUIRING NO
        PROOF ......................................................................................................... 4

        A.      The Parties ......................................................................................... 4

        B.      The Patents ......................................................................................... 5

        C.      General Overview Of The Technology Of The Patents-In-Suit ............ 6

        D.      The Accused Products ......................................................................... 8

IV.     PARTIES' JOINT STATEMENT OF FACTS THAT REMAIN TO BE
        LITIGATED .................................................................................................. 9

V.      PARTIES' JOINT STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE
        LITIGATED .................................................................................................. 9

VI.     PARTIES' PRE-MARKED EXHIBITS ............................................................ 10

VII.    WITNESSES TO BE CALLED ...................................................................... 12

VIII.   PARTIES' BRIEF STATEMENT OF INTENDED PROOFS .............................. 12

IX.     DESIRED AMENDMENTS TO THE PLEADINGS ........................................... 12

X.      CERTIFICATION REGARDING SETTLEMENT ............................................. 12

XI.     MISCELLANEOUS ISSUES .......................................................................... 12

        A.      Order of Presentation of Evidence ..................................................... 12

        B.      Time ................................................................................................. 13

        C.      Procedures Regarding Jurors ............................................................ 13

        D.      Procedures Regarding Objections and Motions .................................. 16

        E.      Stipulated Procedures Concerning Exhibits ....................................... 16

        F.      Stipulated Procedures Concerning Witnesses To Be Called In Person ............... 18

        G.      Stipulated Procedures Concerning Deposition Testimony .................. 19

        H.      Stipulation Concerning Documents ................................................... 20

        I.      Stipulation Regarding Lost Profits .................................................... 20

        J.      Stipulation Regarding HTC Defenses ................................................ 20

        K.      Stipulation Regarding ITC Confidential Business Information ............ 21

        L.      Stipulation Regarding Infringement Contentions, Accused Products, and
                Damages Periods .............................................................................. 21

        M.      Stipulation Regarding Translations ................................................... 24

        N.      Motions in Limine ............................................................................ 25

XII.    ORDER TO CONTROL COURSE OF ACTION ............................................... 25

Plaintiff Immersion Corporation ("Immersion") and Defendants HTC Corporation and HTC America, Inc. (collectively, "HTC") submit this Joint Pretrial Order pursuant to the Court's Scheduling Order (D.I. 60) and Delaware Local Rule 16.3(c)  This Order shall control the subsequent course of the action, unless modified by the Court.

## I.   NATURE OF THE ACTION AND THE PLEADINGS

1.      On March 2, 2012, Immersion filed its Complaint for Patent Infringement (D.I. 1), in which it alleged that HTC infringed United States Patent Nos. 6,429,846 ("the '846 Patent"); 7,592,999 ("the '999 Patent"); 7,969,288 ("'288 Patent"); 7,982,720 ("the '720 Patent"); 8,031,181 ("the '181 Patent"); and 8,059,105 ("the '105 Patent), each of which relates, generally, to the use of haptic feedback technology in computer devices.

2.      On April 12, 2012, the parties filed a joint stipulation to stay the action pending final resolution of Investigation No. 337-TA-834 ("the ITC Investigation") pending before the International Trade Commission.  (D.I. 6.)  On the same day, the Court issued an Order administratively closing the case.  (D.I. 8.)

3.      The case was reopened on May 1, 2013, after the ITC Investigation was terminated before the hearing at Immersion's request.  Immersion filed its First Amended Complaint on May 3, 2013 in which it alleged that HTC infringed the '846, '288, '720, '181, and '105 Patents.  (D.I. 11.)  Immersion filed its Second Amended Complaint on June 10, 2013. (D.I. 28).

4.      HTC's answer to Immersion's Second Amended Complaint, filed June 28, 2013, denied infringement and asserted thirteen affirmative defenses including non-infringement and invalidity.  (D.I. 33.)  HTC did not assert any counterclaims.

5.      Both parties seek a jury trial on all issues triable by a jury.

      6.      On September 19, 2014, the parties filed their Joint Claim Construction brief.

(D.I. 231.) The parties agreed to the following constructions:

| Term | Agreed Construction |
|------|---------------------|
| position signal representing a location ('846 patent) | "signal comprising coordinates of a location" |
| is active ('288 patent) | "has input focus" |
| signal ('288 patent) | "a detectable physical quantity used to represent data, for example an electrical signal" |

(D.I. 231.)

      7.      A *Markman* hearing was held on November 25, 2014.  On February 11, 2015 the

Court adopted the following constructions:

| Term | Court's Construction |
|------|----------------------|
| touch input device ('846 patent) | "device that allows a user to provide input by touching an area on the device, and may include a touch surface, a display, and a touch sensor" |
| touch screen ('720, '181, and '105 patents) | "a display device that allows a user to provide input by touching an area on the device, and may include a touch surface, a display, and a touch sensor" |
| cursor ('846 patent) | "movable, visible mark used to indicate a position of interest on a display device" |
| haptic sensation ('846 patent) | "force sensation or tactile sensation" |
| haptic effect ('720, '181, and '105 patents) | "force effect or tactile effect" |
| force information ('846 patent) | The Court found that no construction is necessary. |
| outputting a force directly on said touch input device ('846 patent) | "outputting a force on the touch input device without intervening structure" |

| Term | Court's Construction |
|---|---|
| impart a first force directly to the touch screen ('105 patent) | "impart a force on the touch screen without intervening structure" |
| at least one other region provides a signal that is used by said computer to control a different function ('846 patent) | The Court found that no construction is necessary. |
| at least one other non-overlapping control region not related to cursor positioning ('720 patent) | The Court found that no construction is necessary. |
| data set ('288 patent) | The Court found that no construction is necessary. |
| one (in the phrase "associated with one software application") ('288 patent) | "one, and only one" |
| application program ('288 patent) | The Court found that no construction is necessary. |

(D.I. 332.)

8.      On October 3, 2014, HTC moved for summary judgment of non-infringement of the '846, '720, '181, and '105 Patents (D.I. 245), non-infringement of the '288 Patent (D.I. 242), invalidity of the '720, '181, and'105 Patents (D.I. 239); and partial summary judgment regarding the damages period of the '288, '720, and'181 Patents (D.I. 233).  The summary judgment motions were argued on November 25, 2014.

9.      On February 11, 2015, the Court granted defendants' motion for invalidity of the '720, '181, and '105 Patents and motion for partial summary judgment regarding the damages period of the '288, '720, and '181 Patents.  (D.I. 333.)  The Court denied defendants' motion for

non-infringement of the '288 Patent. (*Id.*) The Court granted in part defendants' motion for summary judgment of non-infringement of the '846, '720, '181, and '105 Patents: the Court granted summary judgment of non-infringement of U.S. Patent Nos. 6,429,846 and 8,059,105 with respect to literal infringement and denied the remainder of the motion. (*Id.*)

10.     Also on October 3, 2014, HTC filed a *Daubert* motion to exclude testimony of James Pampinella (D.I. 236). The motion was argued on January 30, 2015. On February 24, 2015, the Court granted the *Daubert* motion in part, precluding Mr. Pampinella from offering his theory at trial Immersion is entitled to recover lost profits from HTC, but permitting Mr. Pampinella to offer his opinion regarding reasonable royalty damages. (D.I. 342, 343).

## II.     BASIS OF FEDERAL JURISDICTION

This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. § 271. This Court has subject-matter jurisdiction over this controversy under 28 U.S.C. §§ 1331 and 1338(a). Subject matter and personal jurisdiction are not disputed. Venue is proper under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## III.     PARTIES' JOINT STATEMENT OF ADMITTED FACTS REQUIRING NO PROOF

### A.     The Parties

1.     Immersion is a Delaware Corporation with its principal place of business in San Jose, California.

2.     HTC Corp. is a corporation organized and existing under the laws of Taiwan with its principal place of business in Taiwan, Republic of China.

3.      HTC America is a wholly-owned subsidiary of HTC Corp. and is incorporated under the laws of the state of Washington, with its principal place of business in Bellevue, Washington.

**B.      The Patents**

1.      United States Patent No. 6,429,846, entitled "Haptic Feedback for Touchpads and other Touch Controls," issued on August 6, 2002, names Louis B. Rosenberg and James R. Riegel as inventors, and is assigned to Immersion Corporation.  On May 8, 2012, the USPTO issued a certificate of correction for the '846 patent.

2.      United States Patent No. 7,969,288, entitled "Force Feedback System Including Multi-Tasking Graphical Host Environment and Interface Device," issued on June 28, 2011, names Adam C. Braun, Jonathan L. Beamer, Louis B. Rosenberg, and Dean C. Chang as inventors, and is assigned to Immersion Corporation.  On July 30, 2012, HTC requested an *ex parte* reexamination of the '288 patent based on the Rosenberg, Morrison, Chen, Keyson, and Gemmell references.  The USPTO determined that Rosenberg, Morrison, Chen, and Gemmell did not raise a substantial new question of patentability and ordered reexamination based on Keyson.  During that reexamination, on November 6, 2013, the USPTO issued a final rejection of Claim 18 in view of the provided prior art.  Immersion responded to the rejection by amending claim 18.  On February 10, 2014, the USPTO issued an *ex parte* reexamination certificate confirming the patentability of amended Claim 18.

3.      Immersion is the assignee of all rights, title, and interest in the '846 and '288 patents (collectively, the "Asserted Patents"), including rights to seek damages for past and future infringements thereof.

4.      The claims from the '846 patent that are asserted in this case are Claim 5 (pre-certificate of correction, for acts occurring before May 8, 2012) and Claims 1, 7, 16, 18, and 19 (post-certificate of correction, for acts occurring on or after May 8, 2012).

5.      The claim from the '288 patent that is asserted in this case is Claim 18.

6.      For purposes of this action only, the parties stipulate that (1) for purposes of the actual notice requirement of 35 U.S.C. § 287(a), the date of actual notice for the '846 patent is August 16, 2011; (2) Immersion will only claim damages for the '846 patent for events occurring after August 16, 2011; and (3) in the event that the jury or the judge finds that any accused product infringed a valid and enforceable claim of the '846 patent, then the hypothetical negotiation date will be April 30, 2009 for the purposes of the reasonable royalty damages analysis framework set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).

C.      **General Overview Of The Technology Of The Patents-In-Suit**

1.      The asserted patents in this case relate to interface devices incorporating haptic feedback. At issue is the use of haptic feedback in mobile electronic devices.

2.      Haptic feedback takes advantage of the sense of touch by applying different types of forces, including but not limited to vibrations, pulses, or textures, to a user.

3.      Different types of actuators can be used to generate haptic feedback. An actuator can provide mechanical motion in response to an electrical stimulus. Different types of actuators used for haptic feedback include eccentric rotating mass (ERM) motors, linear resonant actuators (LRA), and piezoelectric actuators.

4.      As shown in the figure below, an ERM motor can be a DC motor with an offset (non-symmetric) mass attached to the shaft of the motor.  As the ERM motor rotates, the offset mass generates a force and causes a movement of the motor.



An example of an Eccentric Rotating Mass (ERM) motor

5.      ERM motors are also referred to as "pager motors."

6.      As shown in the figure below, LRAs typically use a moving mass, permanent magnet, voice coil, and spring to generate forces.  The forces are produced when the moving mass, which is attached to the permanent magnet, moves back and forth in response to an AC electrical signal.



An example of a Linear Resonant Actuator (LRA)

7.      Finally, piezoelectric actuators can also be used to produce haptic feedback. Piezoelectric actuators include a piezoelectric material that deforms or flexes when a voltage is applied, and the movement of the material creates haptic feedback.



An example of a Piezoelectric Actuator

**D.      The Accused Products**

1.      The following table identifies the HTC products accused of infringement in this action, both by their commercial names and their internal code names.

| Commercial name | HTC internal code name |
|---|---|
| 1.  Amaze 4G | Ruby |
| 2.  Desire | Bravo |
| 3.  Droid DNA | DLX |
| 4.  Droid Incredible 2 | Vivo |
| 5.  Droid Incredible 4G LTE | Fireball |
| 6.  EVO 3D/EVO V 4G | Shooter |
| 7.  EVO 4G | Supersonic |
| 8.  EVO 4G LTE | Jewel |
| 9. EVO Design 4G/Hero S | Kingdom |
| 10. EVO View 4G | Express |
| 11. First | Myst |
| 12. Flyer | Flyer |
| 13. Inspire 4G/Desire HD | Ace |
| 14. Jetstream | Puccini |
| 15. myTouch 4G | Glacier |
| 16. One | M7 |
| 17. One Max | T6 |
| 18. One Mini | M4 |
| 19. One S | Ville |

| 20. One SV | K2 |
|---|---|
| 21. One V | Primo |
| 22. One VX | Totem C2 |
| 23. One X | Evita and Endeavor |
| 24. One X+ | Evita RE |
| 25. Rezound | Vigor |
| 26. Rhyme | Bliss |
| 27. Sensation | Pyramid |
| 28. Status | ChaCha |
| 29. Thunderbolt | Mecha |
| 30. Vivid | Holiday |
| 31. Wildfire | Bee |
| 32. Wildfire S | Marvel |

2.     For purposes of this action only, the parties stipulate that HTC Corp. sells the

products identified in the table above to HTC America, Inc. for importation into the United

States and further stipulate that HTC America, Inc. has imported into and sold in the United

States each of the products identified in the table above.

**E.     The Level Of Ordinary Skill In The Art**

1.     For purposes of this action only, the parties stipulate that the level of ordinary

skill in the art for the asserted claims of the '846 patent is: at least a bachelor's degree in

electrical engineering, mechanical engineering, or computer science with at least two years of

experience in the design of devices that include haptics functionalities. General knowledge of

actuators, haptic feedback systems, graphical user interfaces, computer programming/software

development, and mobile devices are among the several skills needed by one of ordinary skill in

the art.

2.    For purposes of this action only, the parties stipulate that the level of ordinary skill in the art for the asserted claims of the '288 patent is: a Bachelor of Science degree in Computer Science, Computer Engineering, Electrical Engineering, or equivalent, plus two years of professional software development experience.

3.    The parties agree that they will not argue that any inferences should be drawn from their stipulations to the level of ordinary skill in the art, and that they will not cross examine any witnesses on any differences between their reports and these stipulations.

## IV.    PARTIES' JOINT STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED

1.    Immersion's Statement of Issues of Fact That Remain To Be Litigated is attached as **Tab 1**.

2.    HTC's Statement of Issues of Fact That Remain To Be Litigated is attached as **Tab 2**.

## V.    PARTIES' JOINT STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

1.    Immersion's Statement of Issues of Law That Remain To Be Litigated is attached as **Tab 3**.

2.    HTC's Statement of Issues of Fact That Remain To Be Litigated is attached as **Tab 4**.

## VI.    PARTIES' PRE-MARKED EXHIBITS

1.    A joint list of exhibits the parties may offer is attached as **Tab 5**.  These exhibits will be identified by the prefix "JX." The parties stipulate that the exhibits on the joint list are authentic and admissible.

2.      Immersion's additional list of exhibits it may offer at trial is attached as **Tab 6**. Immersion's evidentiary exhibits will be identified by the prefix "PX."

3.      HTC's additional list of exhibits it may offer at trial is attached as **Tab 7**. HTC's evidentiary exhibits will be identified by the prefix "DX."

4.      These exhibit lists include citations to the Federal Rules of Evidence to note any objections lodged by other parties. In addition, any exhibits implicated by the parties' motions *in limine* are deemed objected to. Exhibits not objected to may be introduced into evidence through any expert or any other witness competent to testify regarding the exhibit, without the need for additional foundation testimony, provided, however, that an expert may not introduce any exhibit that was not relied upon in any of that expert's reports submitted pursuant to Fed. R. Civ. P. 26(a)(2)(B).

5.      Subject to the provisions of this Order, no party may offer as evidence an exhibit that is not on one of the exhibit lists absent good cause shown or by agreement of the parties.

6.      The parties agree that demonstrative exhibits the parties intend to use at trial do not need to be included on their respective lists of trial exhibits.

7.      Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. Any exhibit, once admitted, may be used equally by each party.

8.      The listing of an exhibit by a party on its exhibit list does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

9.      The parties agree that any date listed on the exhibit list is not evidence of nor an admission of the date of the document, and that failing to list a date is neither evidence nor an

admission of whether the document is dated. The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document.

10.     Each party may use a subset of an exhibit as a standalone exhibit, subject to evidentiary objections. Such subset exhibit shall marked with the entire exhibit's number followed by a letter, for example, PX1-A.

11.     Legible photocopies of United States, foreign patents, United States patent applications and the contents of patent file histories may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

12.     Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals, subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy. Each such document shall be deemed prima facie to have been created on the date it bears (if any), subject to the right of the party against whom it is offered to adduce evidence to the contrary.

13.     Any document not identified on an exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose.

14.     The parties will make available at trial all physical exhibits marked at the depositions taken in this action.

## VII.    WITNESSES TO BE CALLED

1.      A list of witnesses Immersion may call at trial is attached as **<u>Tab 8</u>**.

2.      A list of witnesses HTC may call at trial is attached as **<u>Tab 9</u>**.

3.      Any witness not listed in the attachments referenced above shall be precluded

from testifying absent good cause shown.

4.      The listing of a witness on a party's witness list does not require that party to call

the witness to testify, either live or by deposition.

## VIII.  PARTIES' BRIEF STATEMENT OF INTENDED PROOFS

1.      Immersion's Brief Statement of Intended Proofs including details of damages

claimed and other relief sought is attached as **Tab 10**.

2.      HTC's Brief Statement of Intended Proofs is attached as **Tab 11**.

## IX.   DESIRED AMENDMENTS TO THE PLEADINGS

None.

## X.   CERTIFICATION REGARDING SETTLEMENT

The parties certify that they have engaged in a good faith effort to explore resolution of

the controversy by settlement and continue to be open to settlement discussions.

## XI.   MISCELLANEOUS ISSUES

### A.      Order of Presentation of Evidence

1.      Unless the Court specifies otherwise, the order of presentation of evidence will

generally follow the burden of proof, as stated below:

    a) Opening Statements (Immersion first, followed by HTC)

    b) Immersion's presentation of evidence of infringement and damages

    c) HTC's presentation of evidence of non-infringement and invalidity, and rebutting

       Immersion's evidence of damages

    d) Immersion's presentation of evidence of validity and rebutting HTC's evidence of

       non-infringement, damages, and invalidity

    e) HTC's rebuttal to Immersion's evidence of validity

f) Closing Arguments (Immersion first, followed by HTC, followed by Immersion's rebuttal)

### B.    Time

1.    This case is currently scheduled for a five-day trial beginning at 9:00 a.m. Eastern Daylight Saving Time on March 23, 2015.  Subsequent trial days will begin at 9:00 a.m. Eastern Daylight Saving Time and the jury will be excused each day by 5:00 p.m. Eastern Daylight Saving Time.

2.    Each party shall have a total of 11 hours to present evidence, which shall include direct examination of its own witnesses and cross-examination of adverse witnesses.  In addition, each party may present an opening statement of thirty minutes or less and a closing argument of 45 minutes or less.  Immersion may reserve a portion of its time for responsive argument.

3.    All time when a party is examining a witness shall be charged to the examining party, including objections raised during the examination, subject to reallocation by the Court as the Court deems appropriate.  The parties agree to request any such reallocations at the end of the trial day.

### C.    Procedures Regarding Jurors

1.    The jury will consist of 8 persons.  The jury will be selected immediately prior to trial.  All members of the jury venire called for the trial will be subject to voir dire, as described more fully below.  The court will conduct the initial voir dire based on the general questions submitted by the parties and approved by the Court.  Following the reading of those general questions, the Courtroom Deputy will call 16 potential jurors to sit in the jury box.  Starting with the potential juror in the first row in the seat closest to the bench, the Courtroom Deputy will call up the potential jurors to sidebar, individually, to discuss with the Court and counsel any

questions from the general voir dire questions to which the potential juror gave an affirmative response. After questions by the Court about those responses, the Court will allow counsel to ask follow up questions related to the potential juror's response, but will not permit counsel to attempt to argue their case through such questioning. The Court will also permit counsel to ask questions that arise from the questionnaires that potential jurors would have filled out in advance and which the Clerk's Office would have provided to counsel before the commencement of the trial. In addition, if a potential juror had not answered affirmatively any of the general voir dire questions, but counsel desire to ask questions of a potential juror based on that potential juror's response to the jury questionnaire, that potential juror will be called to sidebar for that purpose. After each potential juror comes to sidebar but before questioning begins of the next potential juror, the Court will consider hardship or any challenges for cause. If a potential juror is excused for hardship or cause, the Courtroom Deputy will call another potential juror to the jury box to fill the seat of the excused potential juror. After that process is completed and there are 16 eligible jurors in the jury box, the Court will then provide counsel a brief period to consult at counsel table before commencement of peremptory challenges. Those challenges will be done through the blind strike method, and there will be 3 such challenges per side, starting with plaintiff and alternating back and forth until all such challenges are exercised or waived. At no time shall counsel indicate who is being struck, or that they are content with the remaining jurors.

2.      Following jury selection, the court will give preliminary instructions to the jury. The jurors will be told that they are permitted to take notes and that they are permitted to pose questions though encouraged to do so sparingly. The process for juror questions will be as follows: at the conclusion of each witness's questioning, the jurors will be asked to submit their

question forms to the bailiff. The court will review the questions, and if it concludes that any should be asked, the court will review them with counsel and rule on any objections. If there are no valid objections, the court will pose the question to the witness.

3.      The parties are required to provide the jurors, after their selection, with jury notebooks. The jurors will have the notebooks with them during the trial. The jury notebooks will contain at least (1) the patents; (2) a separate sheet (the List of Patent Claims) listing each asserted claim and any claim constructions relevant thereto, dependent claims to be shown with the relevant limitations of the independent claim incorporated; (3) a Glossary of Patent Terms; (4) blank pages on which the jurors can take notes; (5) blank pages for juror questions; and (6) room for witness sheets. Immediately before a witness appears, the party calling the witness will provide a witness sheet with a picture of the witness alongside his or her name, to assist the jurors in recalling the evidence.

### D.      Procedures Regarding Objections and Motions

1.      All objections and other remarks to the court will be made while standing. Objections must be accompanied by a statement of the grounds for the objection, but the statement of grounds should be succinct. If argument is needed, the court will so indicate. Side bar or bench conferences are discouraged, and argument outside the presence of the jury will normally take place only during regular recesses or before or after court sessions. Accordingly, counsel should anticipate any evidentiary questions or disputes and bring them to the attention of the court ahead of time.

2.      If any motions are filed during trial, the parties shall provide the court with two courtesy copies (on paper) in addition to filing the motion on the docket.

E.     **Stipulated Procedures Concerning Exhibits**

1.     The requirement to exchange copies of exhibits under Civil L.R. 16.3(d) is waived by both parties, and neither party shall be precluded from offering exhibits into evidence at trial as a result of such waiver.

2.     The parties will instead exchange electronic copies of exhibits on March 16, 2015. Original or hard copy exhibits shall be made available promptly upon request.  Any physical exhibits shall be made available for inspection promptly upon request.  Source code shall remain available through trial, subject to relevant protective order provisions.

3.     The parties shall identify and exchange trial exhibits and demonstrative exhibits that will be used in opening statements by 2:00 p.m. Eastern Time on March 22, 2015, and shall exchange their objections to these trial exhibits and demonstrative exhibits by 6:00 p.m. Eastern Time on March 22, 2015, and shall meet and confer on any objections at some time thereafter, but in no event later than 8:00 p.m. Eastern Time.  The schedule for exchange of demonstratives in closing arguments shall be determined by the parties, with the assistance of the Court if necessary, when the schedule for closing arguments is known.

4.     Unless otherwise agreed by the parties, the parties shall identify by electronic mail by noon Eastern Time the day before the exhibit is expected to be used (including exhibits to be used during opening statements), a written list of the trial exhibits the party intends to use on cross examination.

5.     Unless otherwise agreed by the parties, a party shall provide the other party with final copies of all demonstrative exhibits by 6:00 p.m. Eastern Time the day before the demonstrative exhibit is expected to be used.  This notice provision shall not apply to demonstrative exhibits created in the courtroom during testimony at trial or the enlargement, highlighting, ballooning, or excerption of trial exhibits or testimony.

6.      Objections to trial exhibits and demonstratives shall be made in writing by electronic mail by 8:00 p.m. Eastern Time on the same day.  The parties shall meet and confer by no later than 9:00 p.m. Eastern Time the same day to attempt to resolve any objections to the designated trial exhibits or demonstratives.

7.      Any objections to the trial exhibits or demonstratives that remain after the meet and confer process may be raised with the Court prior to use or introduction of the disputed exhibit or demonstrative, and the parties will raise any such objections in the morning housekeeping session (from 8:30 a.m. to 9:00 a.m. Eastern Time) before the jury trial resumes.

8.      The parties agree that notice of a party's intended use of enlargements of admitted trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given (and need not be exchanged as a demonstrative exhibit), as long as the party has identified its intention to use the trial exhibit and/or deposition testimony according to the preceding paragraphs.

**F.      Stipulated Procedures Concerning Witnesses To Be Called In Person**

1.      By 6:00 p.m. Eastern Time two calendar days before calling a live witness identified on its trial witness list, the calling party shall notify opposing counsel in writing of its intention to call that witness, the order of appearance of witnesses, if more than one, along with an identification of the trial exhibits and demonstrative exhibits that it expects to use on direct examination of each witness.  For example, if a party intends to call such a witness on a Monday, it shall provide such notification by 6:00 p.m. Eastern Time Saturday.  Except as the Court may order otherwise upon good cause shown, the calling party may not call a live witness at trial unless so identified.

2.      Prior to the time they testify, fact witnesses shall be barred from hearing the testimony of other witnesses; however, in accordance with provision (b) of Federal Rule of

Evidence 615, this exclusion rule will not apply to the person(s) designated by each party as its representative, nor shall it apply to expert witnesses.

3.      Although this exclusion rule will not prevent counsel from talking with excluded witnesses about his or her expected testimony before the witness takes the stand, there must be no disclosure of courtroom testimony given to the excluded witnesses by any person. Counsel may not speak to a witness, during any recess while that witness is testifying, either on direct examination, cross-examination, or redirect examination. If a witness's testimony is not concluded by the end of a trial day, counsel and other persons may speak to the witness about matters other than his or her testimony, but neither counsel nor any other person may speak with the witness about his or her testimony. After testifying, a witness is deemed released unless counsel or the court promptly indicates that the witness is not so excused. Counsel is responsible for having sufficiently available witnesses so that the trial may proceed without early adjournments or lengthy recesses. If counsel fails, without good cause, to have sufficient witnesses available, the court may terminate that party's case at that time. Plaintiff's counsel should keep defense counsel advised of the progress of the plaintiff's case so that the defense may be ready to proceed promptly following the conclusion of the plaintiff's case in chief.

**G.      Stipulated Procedures Concerning Deposition Testimony**

1.      At trial, the compilation of deposition testimony by the parties shall be read or played via video in page order.  Counsel may provide a non-argumentative introduction of the witnesses whose testimony is introduced by deposition only.  No objections or exchanges between counsel will be played or read.  If a party designates deposition testimony, and the other party counter-designates, both the designation and counter-designation will be read or played together in page order.  The time available for each side's presentation shall be reduced by the length of its designations or counter-designations, as measured by the lines of testimony each

-19-

party designates as a percentage of the total number of lines read or played. For example, if each side designates 10 lines of testimony and the time required to read or play all of the designated testimony is 10 minutes, each side will be charged 5 minutes.

2.     Nothing in the foregoing shall preclude a party from using deposition testimony at trial for purposes of impeachment.

3.     In order to reduce the number of duplicative exhibits, where a deposition excerpt refers to a document by exhibit number and that identical document was also marked as a different exhibit number, a party may substitute one exhibit for another.

### H.     Stipulation Concerning Documents

1.     For purposes of this action only, each document produced during the relevant discovery period in this case by any party or nonparty to this action pursuant to a discovery request or subpoena is rebuttably presumed to be a true and authentic copy of what it purports to be.

2.     For purposes of this action only, each document or thing made available for inspection during the relevant discovery period in this case by any party or nonparty to this action pursuant to a discovery request or subpoena is rebuttably presumed to be a true and authentic copy of what it purports to be.

3.     Any publication bearing a printed date of publication will be rebuttably presumed to have been published as of that date.

### I.     Stipulation Regarding Lost Profits

1.     Notwithstanding its earlier pleadings and contentions, Immersion will only seek reasonable royalty damages in this action and not lost profits.

J.    **Stipulation Regarding HTC Defenses**

1.    Notwithstanding its earlier pleadings and contentions, HTC will only present defenses of anticipation and obviousness at trial in this action.

K.    **Stipulation Regarding ITC Confidential Business Information**

1.    The parties have conferred and reaffirm their agreement, expressed in the Protective Order entered in this case (D.I. 26), that discovery provided by any party or non-party in the ITC Investigation is part of the discovery in this case and further that any Confidential Business Information produced by a party is governed by the Protective Order of this case, rather than the ITC protective order (Order No. 1).  With respect to any third-party Confidential Business Information to be used at trial in this case, either such information was obtained during discovery in this case or, pursuant to Paragraph 18 of the Protective Order, the third-party supplier gave its written consent to transfer its information produced in the ITC Investigation to this case.

L.    **Stipulation Regarding Infringement Contentions, Accused Products, and Damages Periods**

1.    The following facts, stipulations, and Court orders affect which patent claims are asserted in this case, the products accused of infringing each claim, and the damages periods for each device.

2.    On December 16, 2013, Immersion served its disclosures pursuant to Paragraph 4(c) of the Delaware Default Standard For Discovery, identifying, for each HTC product it accused of infringement, which patent claims it alleged were infringed.

3.    The parties stipulated that, for purposes of this case only, in the event that the jury or the judge finds that any accused product infringed a valid and enforceable claim of U.S. Patent No. 6,429,846, then the hypothetical negotiation date will be April 30, 2009 for the purposes of

the reasonable royalty damages analysis framework set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.* (D.I. 164.)

4.     The parties stipulated that, for purposes of this case only, for purposes of the actual notice requirement of 35 U.S.C. § 287(a), the date of actual notice for U.S. Patent No. 6,429,846 is August 16, 2011, and that Immersion will only claim damages for U.S. Patent No. 6,429,846 for events occurring after August 16, 2011.

5.     The PTO issued a certificate of correction for U.S. Patent No. 6,429,846 on May 8, 2012.  Immersion alleges infringement of Claim 5 in the originally issued patent for acts before May 8, 2012 and alleges infringement of Claims 1, 7, 16, 18, 19 for acts on or after May 8, 2012.

6.     The PTO issued a certificate of reexamination for U.S. Patent No. 7,969,288 on February 10, 2014, confirming the patentability of Claim 18, which had been amended during the reexamination.

8.     On February 11, 2015, the Court ruled on summary judgment (D.I. 333, 334) that Immersion is precluded from collecting damages for claim 18 of the '288 patent before February 10, 2014, because the Court found that the reexamination amendment substantively changed the scope of the claim.  According to product sales data produced by HTC, HTC stopped selling many of the accused products before February 2014.  Immersion reserves all its rights to appeal the Court's ruling, including the right to revisit the scope of products accused of infringing the '288 patent.

9.     Subject to Immersion's reservation of rights and for the purposes of this case only, the parties hereby stipulate that, in view of (a) the Court-determined damages window for the '288 patent, (b) the certificate of correction of the '846 patent, and (c) the product sales data

produced by HTC, the following chart describes which accused products are accused of

infringing which asserted claims in this case:

| Accused Products and Asserted Claims | | | | |
|---|---|---|---|---|
| **HTC product** | **HTC internal code name** | **Accused for '846 Patent Original Claim 5 / Claim 1** | **Accused for '846 Patent Claims 7, 16, 18, 19** | **Accused for '288 Patent Claim 18** |
| Amaze 4G | Ruby | ✓ | ✓ | |
| Desire | Bravo | ✓ | | |
| Droid DNA | DLX | ✓ | ✓ | |
| Droid Incredible 2 | Vivo | ✓ | | |
| Droid Incredible 4G LTE | Fireball | ✓ | ✓ | |
| EVO 3D / EVO V 4G | Shooter | ✓ | ✓ | |
| EVO 4G | Supersonic | ✓ | | |
| EVO 4G LTE | Jewel | ✓ | ✓ | |
| EVO Design 4G / Hero S | Kingdom | ✓ | ✓ | |
| EVO View 4G | Express | ✓ | ✓ | |
| First | Myst | ✓ | ✓ | ✓ |
| Flyer | Flyer | ✓ | ✓ | |
| Inspire 4G / Desire HD | Ace | ✓ | | |
| Jetstream | Puccini | ✓ | | |
| MyTouch 4G | Glacier | ✓ | | |
| One | M7 | ✓ | ✓ | ✓ |
| One Max | T6 | ✓ | ✓ | ✓ |
| One Mini | M4 | ✓ | ✓ | ✓ |
| One S | Ville | ✓ | ✓ | |
| One SV | K2 | ✓ | ✓ | ✓ |

| Accused Products and Asserted Claims | | | | |
|---|---|---|---|---|
| HTC product | HTC internal code name | Accused for '846 Patent Original Claim 5 / Claim 1 | Accused for '846 Patent Claims 7, 16, 18, 19 | Accused for '288 Patent Claim 18 |
| One V | Primo | ✓ | ✓ | |
| One VX | Totem C2 | ✓ | ✓ | |
| One X | Evita and Endeavor | ✓ | ✓ | |
| One X + | Evita RE | ✓ | ✓ | |
| Rezound | Vigor | ✓ | ✓ | |
| Rhyme | Bliss | ✓ | | |
| Sensation 4G | Pyramid | ✓ | | |
| Status | ChaCha | ✓ | | |
| Thunderbolt | Mecha | ✓ | ✓ | |
| Vivid | Holiday | ✓ | ✓ | |
| Wildfire | Bee | ✓ | | |
| Wildfire S | Marvel | ✓ | ✓ | |

M.   **Stipulation Regarding Translations**

1.   The parties have conferred and determined that for the purposes of this case, the HTC's certified translations of its asserted Japanese-language Ogasawara (HTC-IM-DEL0041242), Sato (HTC-IM0033449), and Tsuji (HTC-IM0019094) prior art references will be presumed accurate, authentic, and admissible (subject to other objections) versions of whatever documents they purport to translate. Both parties stipulate to using HTC's certified translations as their translations at trial. The parties further agree that they may refer to Immersion's certified translations solely for the limited purpose of translating any word, term or diagram labels that were not translated at all in HTC's certified translations.

-24-

N.    **Motions in Limine**

1.    Immersion's Motions in Limine (including HTC's response and all exhibits) are attached as **Tab 12**.

2.    HTC's Motions in Limine (including Immersion's response and all exhibits) are attached as **Tab 13**.

XII.   **ORDER TO CONTROL COURSE OF ACTION**

This Order shall control the subsequent course of the action, unless modified by the Court.

SO ORDERED this _18th_ day of _March_, 2015

Honorable Timothy B. Dyk
United States Circuit Judge
of the United States Court of Appeals for the
Federal Circuit, sitting by designation.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Bryan Wilson
Marc David Peters
Michael Kryston
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
Tel:  (650) 813-5600
bwilson@mofo.com
mdpeters@mofo.com
mkryston@mofo.com

By:   /s/ Richard L. Horwitz
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        bpalapura@potteranderson.com

Harold J. McElhinny
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Tel:  (415) 268-7000
hmcelhinny@mofo.com

*Attorneys for Plaintiff Immersion Corporation*

-26-

OF COUNSEL:

John P. Schnurer
Michael J. Engle
Ryan B. Hawkins
Miguel J. Bombach
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA 92130
Tel: (858) 720-5700
jschnurer@perkinscoie.com
mengle@perkinscoie.com
rhawkins@perkinscoie.com
mbombach@perkinscoie.com

Ryan McBrayer
Jonathan R. Putman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Tel: (206) 359-8000
rmcbrayer@perkinscoie.com

Cheng C. Ko
PERKINS COIE LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
Tel: (602) 351-8000
cko@perkinscoie.com

Terrence J. Wikberg
Brandon M. White
PERKINS COIE LLP
700 Thirteenth Street N.W.
Washington, D.C. 20005
Tel: (202) 654-6200
twikberg@perkinscoie.com
bmwhite@perkinscoie.com

Dated: March 17, 2015
1184270/41933

ASHBY & GEDDES

By:   /s/ Tiffany Geyer Lydon
      John G. Day (#2403)
      Tiffany Geyer Lydon (#3950)
      500 Delaware Avenue, 8th Floor
      P.O. Box 1150
      Wilmington, DE 19899
      Tel: (302) 654-1888
      jday@ashby-geddes.com
      tlydon@ashby-geddes.com

*Attorneys for Defendants HTC Corporation
and HTC America, Inc.*